Welch, J.
We see no error in the charge of the court, or in its-refusal to give the instructions asked by the plaintiffs in error.
The statute under which the action was brought (1 S. & C. 664, sec. 2) provides:
“ That if any person or persons, by playing any game or games, or by means of any bet or wager, shall lose to any other person or-persons any sum of money, . . . and shall pay the same, or any part thereof, to the winner or winners, the person so losing may . . . sue for, and recover the money .... from the winner or winners.”
If the plaintiffs in error were in fact jointly engaged in maintaining and carrying on an illegal business of gaming, it is not for them to set up the illegality of the business, or of the contract be-teen them,, to defeat their joint liability. It is a well-known rule-of law, that when an illegal conspiracy is proven, the acts of each conspirator are held as the acts of all. It is true their illegal contract is not binding between them, but it is binding upon them. It-gives them no legal rights, but it imposes upon them legal liabilities. Having established their joint proprietorship, the defendant in error, by proving the receipt of money by one, proved its receipt by all, and entitled himself to a joint recovery against all. The real “ winners ” of the money are the proprietors of the business,. *who, by the terms of the contract between them — no matter-if it be an illegal contract — are to furnish the funds, pay the losses, and receive the winnings. The dealer is their agent, and they are *433 estopped from denying his power to bind them. His winnings are their winnings, and his receipt of money won is their receipt. Any other construction of the law would render it utterly ineffective. It. would only be necessary to put forward an irresponsible “ dealer,’" in order that the real gamblers, who grow rich by his winnings,, might evade the law. This would be to hold the nominal party, and let the real party escape — to convict the “ dealer,” and acquit the dovMe dealer. It would be of little avail to set aside the “ game ” by which the plaintiff has been defrauded of his money, and allow him- to recover it back, and yet allow the deeper game, by which the law itself is to be defrauded of its purpose, to have its intended effect.
Nor do we perceive any objection to allowing a recovery in one action for the aggregate of sums lost at different times, or for the sum of losses between certain dates, without showing the particular dates or amounts of each loss. No such objection would lie in. an action for money loaned, or for money had and received for the-use of the plaintiff in the action. The defendant in error was entitled to recover of the.plaintiffs in error all the money they had won from him, and what the whole amount was, must be arrived at by the best evidence the nature of the case will admit. Indeed, the rule adopted by the court seems to be for the benefit of the plaintiffs in error, for by it they get a credit for the amount of their losses. We think the court was right in its charge as to this branch of the case.
The question whether the court erred in refusing the instruction asked in regard to the testimony of defendant in error, does not. arise in the case. We see in the bill of exceptions no evidence tending to show that defendant in error knowingly swore to any thing that was false. No such supposed false testimony was-pointed out to the court at the time the instruction was asked, nor does it appear that a single witness contradicted him in any statement he made. We, therefore, deem the instructions asked in regard to his testimony as a mere abstract proposition, and its refusal by the court as not being the subject of review in this case.
The exception taken to the order ruling out certain testimony (that of the witness Lisle) offered by the plaintiffs in error, it is. deemed unnecessary to notice, further than to say, that we think, the evidence was properly rejected by the court.
*434 We are of opinion, however, that the court erred in refusing a new trial. After a careful examination of the testimony, we are satisfied that the verdict was excessive to the amount of $6,150, being for $17,545, when it should have been for only $11,395. We think the decided preponderance of evidence is, that the whole amount of losses by defendant in error was $17,395, and the whole amount of his winnings $6,150. If, therefore, the defendant will remit said sum of $6,150, as of the date of the judgment, it will be affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial.
Day, C. J., and White, Brinkerhoee, and Scott, JJ., concurred.